UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| KYLE NAPIER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 18-206-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of the Social Security | ) | **AND ORDER** |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Kyle Napier and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 13, 15] Napier contends that the ALJ assigned to his case did not properly evaluate his subjective complaints of pain and that the ALJ's decision is not supported by substantial evidence. He asks the Court to enter an award of benefits or, alternatively, to remand the matter for a new administrative hearing. The Commissioner, however, argues that the ALJ properly evaluated the evidence and that the ALJ's decision should be affirmed because it is supported by substantial evidence.

After examining all relevant arguments that have been properly presented, the Court will grant the Commissioner's motion and deny the relief sought by Napier.

**I.**

Napier filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") on January 11, 2016. [*See* Administrative Transcript, "Tr."

- 1 -

17.] He previously filed a disability application on November 9, 2012, but ALJ Tommye Mangus issued an unfavorable decision on the prior claim. [Tr. 61-77] In his current application, Napier alleged a disability onset date of April 7, 2012, which he later amended to January 11, 2016. [Tr. 219] The Social Security Administration ("SSA") denied his application initially and upon reconsideration. [Tr. 106, 127] Napier then requested a hearing before an ALJ. [Tr. 158] ALJ Brandie Hall issued a written opinion following the administrative hearing, finding that Napier was not disabled. [Tr. 14-39] The Appeals Council subsequently denied Napier's request for review. [Tr. 1-8]

Napier has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.

Napier was 42 years-old at the time of the ALJ's decision. He previously worked as a truck driver and bulldozer operator. [Tr. 47-48] Napier attended school through the 8th grade. [Tr. 251] He obtained a commercial driver's license, but it expired in 2015. [Tr. 251] Napier currently resides with his wife and adult son. [Tr. 52]

Napier previously filed an application for benefits in 2012 for an alleged disability beginning April 7, 2012. [Tr. 64] As noted above, an unfavorable decision was rendered by ALJ Tommye Mangus. [Tr. 61] ALJ Mangus found that Napier had severe impairments of depression, anxiety, a history of polysubstance disorder, and mild lumbar spine degenerative changes. [Tr. 66] The ALJ concluded that Napier had the residual functional capacity ("RFC") to perform medium work with some exceptions. [Tr. 72-73] ALJ Hall noted in her current decision that she was bound by ALJ Mangus' prior decision. [Tr. 17]

Napier was admitted to Harlan ARH Hospital for suicidal ideations on April 20, 2015. [Tr. 541] He was then transferred to Harlan Psychiatric Center. [Tr. 543] Napier met with Dr. Syed M. Raza and advised that he hears voices telling him to kill himself and that he has been having panic attacks. [Tr. 546] He rated his depression as a 7 out of 10, his pain as a 9 out of 10, and anxiety as a 8 out of 10. [Tr. 546] Dr. Raza noted that Napier had a previous suicide attempt in 2009, and he had been noncompliant with his care. [Tr. 547] He was discharged on April 27, 2015. [Tr. 550]

Napier was treated at Elite Health Care for back, neck, and hip pain in November and December 2015. [Tr. 597] He had been treated at this location for eight years but stopped in 2013 due to the cost associated with his care and traveling to Tennessee. [Tr. 26] Lauren Moss, APRN-C, reviewed his previous MRI from March 7, 2013, which revealed a broad-based central disc protrusion, mild stenosis, and a minor posterior disc bulge. [Tr. 597] Napier received pain medication, including Neurontin and Percocet, to treat his ailments. [Tr. 597]

Ed Ross, Ph.D., reviewed Napier's file on May 13, 2016. [Tr. 100] Dr. Ross found that Napier's spine disorders were non-severe, but he had a severe affective disorder and a severe substance addiction. [Tr. 99] Ross opined that Napier's ability to remember locations and work-like procedures, ability to understand and remember very short simple instructions, ability to maintain attention and concentration for extended periods, ability to sustain an ordinary routine, and ability to make simple-work related were not significantly limited by his impairments. [Tr. 101-02]

Dr. Ross also explained that Napier's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and his ability to complete a normal workday without interruptions from psychologically based symptoms and

to perform at a consistent pace were not significantly limited by his impairments. [Tr. 102] Ross explained that Napier's ability to understand and remember detailed instructions was moderately limited by his impairments. [Tr. 101]

Robert Culbertson, M.D., reviewed Napier's file in September 2016 and did not affirm the initial assessment conducted by Anna Duval, SDM. [Tr. 119-121] Dr. Duval initially reviewed Napier's file and concluded that he had the physical RFC to do heavy/very heavy work. [Tr. 104] But Dr. Culbertson found that Napier could occasionally lift or carry 50 pounds and frequently carry or lift 25 pounds. [Tr. 120] He explained that Napier could sit or stand with normal breaks for about 6 hours in an 8-hour workday. [Tr. 120] Dr. Culbertson noted that Napier could frequently climb ramps/stairs, stoop, kneel, crouch, and crawl. [Tr. 120] And he could occasionally climb ladders, ropes, and scaffolds. [Tr. 120] Dr. Culbertson concluded that Napier had the RFC to perform medium work. [Tr. 120]

Napier met with consultative examiner Leigh A. Ford, Ph.D., on May 9, 2016. [Tr. 627-29] At the time of this visit, his chief complaints were back pain, arthritis, kidney disease, and depression. [Tr. 627] Napier told Dr. Ford that he has been receiving treatment for depression and that he had been hospitalized once following a suicide attempt. [Tr. 628] Napier also acknowledged that he takes pain medication and was previously addicted to opioids, but stated had not abused drugs since completing a rehabilitation program through drug court in 2010. [Tr. 628] Dr. Ford observed that Napier's motor activity was somewhat restless but that his memory capacity appeared normal. [Tr. 628] She also found that Napier's attention and concentration appeared to be somewhat variable and his fund of knowledge appeared to be average. [Tr. 628] Ford further noted Napier's mood appeared flat and affect appeared pessimistic and depressed. [Tr. 628]

Dr. Ford concluded that Napier suffered from major depressive disorder, with psychotic features and an unspecified opioid-related disorder that was in remission. [Tr. 629] Ford found, however, that Napier's ability to understand, remember, and carry out instructions toward performance of simple repetitive tasks was not affected by his impairments. [Tr. 629] She explained that Napier's ability to sustain attention and concentration is slightly limited by his impairments. [Tr. 629] She further noted that Napier had moderate to marked limitations in his ability to tolerate the stress and pressure of day-to-day employment. [Tr. 629] She concluded that her prognosis was guarded, but believed that consistent continued outpatient treatment could possibly improve symptoms. [Tr. 629]

Paul Ebben, Psy. D., reviewed Napier's file on July 22, 2016. [Tr. 123] He noted Napier retained the mental skills to acceptably understand and recall simple and detailed work procedures and instructions, complete routine mental aspects without special supervision, follow a regular schedule, and maintain attention and concentration for two-hour periods. [Tr. 123] He also explained that Napier could acceptably tolerate co-workers, accept supervision, adapt to needed change, and appreciate work hazards. [Tr. 123] Dr. Ebben affirmed the decision of Dr. Ross on reconsideration. [Tr. 123]

Dr. Robert Spangler conducted a psychological evaluation on August 2, 2017, more than a year after Napier's date last insured. [Tr. 673-682] Dr. Spangler's prognosis was "fair with mental health treatment if medical conditions improve or stabilize." [Tr. 678] He found that Napier suffered from major depressive disorder, GAD, borderline intelligence, limited reading skills, marginal math skills, tobacco use disorder, drug use disorder (full remission). [Tr. 678]

Dr. Spangler completed a Medical Assessment of Ability to Do Work-Related Activities. [Tr. 680-682] He indicated that Napier's ability to follow simple work rules, relate to co-workers, use judgment with the public, interact with supervisors, and function independently was fair. [Tr. 680] However, he noted Napier's ability to relate to co-workers and deal with work stresses was poor. [Tr. 680] Spangler found that Napier's ability to maintain attention and concentration was good when he was on his prescriptions. [Tr. 680] Lastly, he concluded that Napier's impairments would cause him to be absent more than four days a month. [Tr. 682]

Napier testified during the administrative hearing that he suffers from back and leg pain. [Tr. 50] He explained that he was being treated with pain medicines and muscle relaxers, but failed a drug test the day before the hearing. [Tr. 50] He also indicated that the back pain has been getting worse since his last application for benefits. [Tr. 54] He stated that he could only sit for about 15 to 20 minutes before he would need to stand. [Tr. 51] Napier also testified that he was diagnosed with major depressive disorder. [Tr. 52] He indicated that he was previously hospitalized for suicidal thoughts and was still having panic attacks. [Tr. 55-56] Napier explained that his son does most of the household chores and that he does not engage in social activities. [Tr. 53]

Following Napier's testimony, Vocational Expert Jackie Rogers testified that Napier could not return to his past relevant work but could perform other work. [Tr. 58-59] She testified that someone with Napier's limitations could work as a landscape worker, industrial cleaning person, and a hand packer. [Tr. 59-60]

ALJ Hall issued a decision on December 21, 2017, concluding that Napier was not disabled from January 11, 2016 through March 31, 2016, the date last insured. [Tr. 34] After

reviewing the previous ALJ's decision, the documentary record, and the testimony presented at the hearing, ALJ Hall determined that Napier had the following severe impairments: depression, anxiety, history of polysubstance disorder, and mild lumbar spine degenerative changes. [Tr. 20] The ALJ concluded that Napier did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 20]

The ALJ explained that Napier has the RFC to perform "medium work" subject to the following limitations:

> except for work requiring more than occasional climbing of ladders, ropes, or scaffolds or more than frequent climbing of ramps or stairs, stooping, crouching, crawling or concentrated exposure to vibration. The claimant can understand, remember, and carry out simple instructions and tasks; tolerate occasional casual contact with coworkers, supervisors, and the public; and adapt to occasional, gradually introduced workplace changes.

[Tr. 22]

ALJ Hall concluded that Napier could not perform his past relevant work as a truck driver or bulldozer operator. [Tr. 32-33] However, she determined that there were jobs that existed in significant numbers in the national economy that Napier could perform. [Tr. 33] As a result, the ALJ found that Napier was not under disability from January 11, 2016, through March 31, 2016, the date Napier was last insured. [Tr. 34]

## III.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is

made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 404.1520(e). If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312

F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV.

#### a. ALJ Hall Properly Evaluated Napier's Subjective Complaints of Pain.

Napier contends that the ALJ did not properly evaluate his subjective complaints of pain. [Record No. 13-1, p. 11] However, the Court has reviewed the record and finds that the ALJ properly applied the required two-step process for evaluating subjective complaints of pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 5180304 (Oct. 25, 2017); *Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

First, ALJ Hall found that Napier's medically-determinable impairments could reasonably be expected to cause the symptoms he alleged. *See* 20 C.F.R. § 404.11529(b). The ALJ noted that Napier suffered from mild lumbar spine degenerative changes, anxiety, history of polysubstance disorder, and depression. She concluded, however, that Napier's statements concerning the intensity, persistence, and limiting effects of his impairments are not entirely consistent with the medical evidence and other evidence in the medical record. *See* 20 C.F.R. § 404.1529(c). [Tr. 22]

Next, ALJ Hall discussed the relevant medical evidence and explained why it did not support the limitations that Napier alleged. She found that Napier gave ambiguous answers regarding his drug and alcohol use. [Tr. 32] The ALJ stated that the record "is suggestive of drug seeking" because Napier repeatedly requested increases in narcotics and he would visit the ER when he ran out of medicine. [Tr. 32] Additionally, he declined treatment with Jeremy Jackson, M.D., when he was advised that no narcotics would be prescribed. [Tr. 32] Also, ALJ Hall noted that Napier's claimed physical limitations were contradicted by the fact that he told Dr. Raza he had been doing yard work for money in June 2016. [Tr. 32, 631]

The ALJ's credibility determinations are given great weight, particularly since the ALJ is tasked with observing the claimant's demeanor and credibility. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). Napier has not identified any error in the ALJ's application of the two-step process to evaluate his subjective complaints of pain or psychological symptoms. Accordingly, there is no basis to disturb the ALJ's ruling for this reason.

**b. The ALJ's Decision Is Supported by Substantial Evidence.**

Napier also contends that a review of the entire record illustrates that he could not perform even sedentary work on a regular basis. [Record No. 13-1, p. 8] Specifically, he argues that the ALJ failed to properly evaluate the medical evidence that documents his depression, anxiety, history of polysubstance disorder, and mild lumbar spine degenerative changes. However, the ALJ found that all of these conditions were severe impairments and considered them in making her decision.

Napier also alleges that he suffers from additional impairments that the ALJ failed to set forth. But he does not assert what other additional impairments he suffers from or reference

any medical evidence illustrating other medical impairments. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones."). Further, much of the evidence Napier reviewed in his motion was discussed in the prior decision by ALJ Mangus.[1]

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Miller v. Comm'r of Soc. Sec.* 811 F.3d 825, 838 (6th Cir. 2016) (citing SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). The ultimate decision of a claimant's RFC is made by the ALJ. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); 20 C.F.R. 404.1546(c). When deciding a claimant's RFC, the ALJ considers "the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 443 (6th Cir. 2010). ALJ Hall considered the entire record and testimony presented at the hearing in making her decision regarding Napier's RFC.

She provided a detailed review of Napier's medical history, consultative examinations, the documentary record, and Napier's own testimony before assigning specific weight to the opinions of the consultative examiners. The ALJ noted that the "record was suggestive of drug

---

[1] ALJ Hall stated she was bound by the prior decision in accordance with *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). In *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), the Sixth Circuit concluded that Drummond does "not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rules and the record in prior proceedings." ALJ Hall's opinion does not run afoul of *Drummond* or *Earley*. The application was for a new period of time, but ALJ Hall remained cognizant of the record in the prior proceeding.

seeking." [Tr. 32] ALJ Hall reviewed Napier's requests for increases in narcotics and his statements that he would buy drugs off the street. [Tr. 32] She also provided physical limitations consistent with the state agency examiner, Dr. Culbertson. Napier argues that he does not have the RFC to perform medium work, but his alleged limitations are inconsistent with the fact that he told Dr. Raza he was doing yard work for money in June 2016 and he reported to the ER for pain in his hand in February 2014 after "hitting someone." [Tr. 32, 447, 631]

Napier suggests that the ALJ did not properly consider his severe psychological impairments in developing his RFC. [Record No. 13, p. 10] However, the ALJ conducted a lengthy discussion of Napier's mental health treatment, psychological consultative examinations, and his own testimony of his psychological impairments. [Tr. 27-32] ALJ Hall gave great weight to the state examiners, Dr. Ross and Dr. Ebben, in developing Napier's RFC and provided psychological limitations consistent with their opinions. [Tr. 32] She limited Napier to understanding, remembering, and carrying out simple instructions and tasks; tolerating occasional and casual contact with coworkers, supervisors, and the public; and adapting to occasional, gradually introduced workplace changes. [Tr. 22]

Napier also contends that the ALJ did not properly consider the opinion of Dr. Spangler. ALJ Hall gave little weight to the opinion of Dr. Spangler because it was not consistent with the medical evidence of record and appeared to rely on Napier's subjective reporting of symptoms. [Tr. 32] Further, [e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *See Strong v. SSA*, 88 F. App'x 841, 845 (6th Cir. 2004). "A retrospective and conclusory opinion is not entitled to significant weight because it

is not supported by relevant and objective evidence." *Id*. Dr. Spangler conducted his consultative examination more than a year after Napier's date last insured. [Tr. 672-679]

If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Here, ALJ Hall's decision is supported by substantial evidence.

## V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Kyle Napier's Motion for Summary Judgment [Record No. 13] is **DENIED.**

2. Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Motion for Summary Judgment [Record No. 15] is **GRANTED.**

3. The Commissioner's decision will be **AFFIRMED** by a separate judgment to be entered this date.

Dated: January 29, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge